**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

United States of America,
    Plaintiff,

        v.

Leonardo Rivera-Torres,
        Defendant.

**Criminal No. 3:03-0294(GMM)**

## OPINION AND ORDER

Pending before the Court is Leonardo Rivera-Torres' ("Rivera-Torres") *Movant Leonardo Rivera-Torres' Pro-Se Motion for A Reduction of Term of Imprisonment Pursuant to Title 18 U.S.C. 3582(C)(1)(A)(i)-First Step Act of 2018-Section #404 (2018); and the 'Extraordinary and Compelling Nature' of Changes in Federal Law and the U.S. Sentencing Guidelines, Namely; U.S.S.G. Amendment #748/#750; and U.S.S.G. Amendment #782/#788 (2014)* ("Fifth Motion to Reduce Sentence"). (Docket No. 821). For the reasons stated herein, the Fifth Motion to Reduce Sentence is **DENIED WITH PREJUDICE.**

### I.    RELEVANT PROCEDURAL BACKGROUND

On March 14, 2005, Rivera-Torres was found guilty in a jury trial of one (1) Count of conspiracy to possess with intent to distribute at least five (5) kilograms of cocaine, fifty (50) grams of cocaine base ("crack cocaine"), one (1) kilogram of heroine, and one hundred (100) kilograms of marihuana in violation of 21 U.S.C. § 846 and 841(a)(1). (Docket No. 496). On March 21, 2005,

Criminal No. 3:03-0294(GMM)
Page -2-

Rivera-Torres filed his *Motion for Judgement of Acquittal Pursuant to Federal Rule of Criminal Procedure 29(C)* ("First Motion for Acquittal") contesting that the government did not provide enough evidence to support the jury's conviction. (Docket No. 428). However, the Court denied the First Motion for Acquittal on September 22, 2005, stating that the Government met its burden and presented sufficient evidence at trial to support the jury's ruling. (Docket No. 490 at 11).

On September 30, 2005, the Court sentenced Rivera-Torres to 300 months (25 years) of imprisonment and 60 months (5 years) of supervised release. (Docket No. 496). On October 5, 2005, Rivera-Torres appealed his conviction to the First Circuit. (Docket No. 498). The First Circuit Court of Appeals ("First Circuit") confirmed the ruling of the District Court on August 26, 2009. (Docket No. 626); *see also* United States v. Rivera Calderon, 578 F.3d 78 (1st Cir. 2009).

On appeal, the First Circuit provided a useful summary of this Court's sentencing considerations. At sentencing, this Court "found [Rivera-]Torres responsible for eighteen kilograms of cocaine, seventy-two kilograms of crack, and between 1,000 and 3,000 kilograms of marijuana."). Id. At the time, these quantities carried a mandatory minimum sentence of 10 years of imprisonment and a maximum of life. *See* 18 U.S.C. §841(b)(1).

Applying the United States Sentencing Guidelines ("Guidelines"), the District Court assigned Rivera-Torres a Base Offense Level ("BOL") of 38. United States v. Rivera Calderon, 578 F.3d at 105; *see also* U.S.S.G. § 2D1.1(c)(1) (noting that a defendant qualifies for a base offense level of 38 if he is responsible for "1.5 KG or more of Cocaine Base"). Rivera-Torres also received a two-level increase for possession of a firearm while participating in a drug conspiracy, U.S.S.G. §2D1.1(b)(1), and a two-level increase for organizing, leading, managing, or supervising a criminal activity, U.S.S.G. § 3B1.1(c). Id. "The resulting total offense level of 42 combined with a criminal history category of II . . . yield[ed] a sentencing range of 360 months to life." Id. Ultimately, at sentencing, this Court gave Rivera-Torres a "non-guidelines sentence of 300 months imprisonment." Id.; *see also* (Docket No. 496). On November 22, 2010, Rivera-Torres filed his *Motion Under Title 28 USC § 2255 to Vacate, Set Aside and Correct Sentence* ("First Motion to Vacate"). (Docket No. 639). The Court dismissed the First Motion to Vacate with Prejudice on April 30, 2012. (Docket No. 673); *see also* Rivera-Torres v. United States, 38 F. Supp. 3d 199, 205 (D.P.R. 2012).

On November 12, 2014, Rivera-Torres then filed his *Motion to Appoint Counsel Pursuant to the Sentencing Commissions Latest Reduction Amendment 782* ("First Motion to Reduce Sentence").

Criminal No. 3:03-0294(GMM)
Page -4-

(Docket No. 694). On August 2, 2016, the Court denied Rivera-Torres' First Motion to Reduce Sentence since "Defendant was already sentenced to a term of imprisonment that is lower than the otherwise applicable lower end of the guidelines under a total offense level of 40 and Criminal History [Category] of II." (Docket No. 741). Rivera-Torres filed his *Motion of Notice of Appeals Pursuant to Rule 4* ("Second Motion to Appeal") on August 25, 2016, contesting the ruling of the District Court regarding the Amendment 782. (Docket No. 743). However, the First Circuit affirmed this Court on June 19, 2017. (Docket No. 754).

On September 23, 2016, Rivera-Torres filed his *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* ("Second Motion to Vacate") (Docket No. 746). Then, on January 12, 2021, Rivera-Torres filed his *Motion for Reduction of Sentence Pursuant to First Step Act of 2018, Section 404 Making the Fair Sentencing Act Retroactive* ("Second Motion to Reduce Sentence"). (Docket No. 789). That same day, Rivera-Torres also filed his *Motion Under Title 28 USC 2255 to Vacate Set Aside and Correct Sentence* ("Third Motion to Vacate"). On March 17, 2022, the Court dismissed both the Second Motion to Vacate and the Third Motion to Vacate on the grounds that the arguments made by Rivera-Torres were already addressed in the Court's ruling on his First Motion to Vacate, which was Dismissed with Prejudice. (Docket No. 806).

Criminal No. 3:03-0294(GMM)
Page -5-

On January 24, 2022, *Movant Leonardo Rivera-Torres' Pro-Se Motion for a Reduction of Term of Imprisonment Pursuant to Title 18 U.S.C. 3582(C)(1)(A)(I)- First Step Act of 2018 – Section #404 (2018); and the "Extraordinary and Compelling Nature" of Changed in Federal Law and the U.S. Sentencing Guidelines, Namely; U.S.S.G. Amendment #748/#750; and U.S.S.G. Amendment #782/#788 (2014)* ("Third Motion to Reduce Sentence"). (Docket No. 799). On March 21, 2022, the United States filed its *Opposition for Sentence Reduction based on First Step Act of 2018* ("Opposition to Second Motion to Reduce Sentence"). (Docket No. 808).

On June 21, 2022, Rivera-Torres filed a *Movant Leonardo Rivera-Torres' Pro-Se Motion for A Reduction of Term of Imprisonment Pursuant to Title 18 U.S.C. 3582(C)(1)(A)(i)-First Step Act of 2018-Section #404 (2018); and the "Extraordinary and Compelling Nature" of Changes in Federal Law and the U.S. Sentencing Guidelines, Namely; U.S.S.G. Amendment #748/#750; and U.S.S.G. Amendment #782/#788 (2014)* ("Fourth Motion to Reduce Sentence"). (Docket No. 813). Then, on January 18, 2023, Rivera-Torres filed his Fifth Motion to Reduce Sentence. (Docket No. 821). The Court notes that Rivera-Torres' Second, Third, Fourth and Fifth Motions to Reduce Sentence argue the same set of facts. *See* (Docket Nos. 789; 813; 821).

Criminal No. 3:03-0294(GMM)
Page -6-

## II.  LEGAL STANDARD

A.  <u>Section 404 of The First Step Act of 2018</u>

The Fair Sentencing Act of 2010 ("FSA") raises the threshold quantities of crack cocaine required to activate mandatory minimum sentences. *See* FSA, Pub. L. No. 111-220, 124 Stat.2 2372 (2010); *see also* <u>United States v. Smith</u>, 954 F.3d 446, 447 (1st Cir. 2010). Section 2 of the FSA amended the amount of crack cocaine necessary to trigger a 10-year mandatory minimum sentence from 50 grams to 280 grams. *See* <u>United States v. Rodríguez-Rodríguez</u>*,* 2023 WL 5199392, at *2 (D.P.R. 2023) (*citing* 124 Stat. at 2372). However, the FSA was only to be applied prospectively. *See* <u>Dorsey v. United States</u>, 567 U.S. 260, 264 (2012).

In December 2018, Congress passed the First Step Act of 2018 ("First Step Act"). Pub. L. 115-391, § 404, 132 Stat. 5194. Section 404 of the First Step Act provided an avenue for inmates with sentences subject to Sections 2 or 3 of the FSA to request a reduced sentence. *See* <u>Id</u>. at 5222; *see also* <u>United States v. Castillo-Torres</u>, Criminal No. 4-414-4 (RAM), 2024 WL 1672281, at *2 (D.P.R. Apr. 18, 2024) ("[T]he court may modify an imposed term of imprisonment to the extent expressly permitted by statute" (*quoting* 18 U.S.C. § 3582(c)(1)(B))). To be eligible for a possible sentence reduction under the First Step Act, a defendant must (1) have violated a federal criminal statute whose penalties were modified by Sections 2 or 3 of the FSA prior to August 3, 2010;

Criminal No. 3:03-0294(GMM)
Page -7-

and (2) have a sentence that is not already imposed or reduced within the parameters set forth by Sections 2 or 3 of the FSA. *See* Pub. L. 115-391, § 404.

Even if the First Step Act applies, "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. 115-391 § 404(c). Notably, the United States Supreme Court has maintained that district courts have discretion in reviewing a First Step Act motion. *See* Concepción v. United States, 597 U.S. 481, 502 (2022) (A district court need not "be persuaded by the nonfrivolous arguments raised by the parties before it, but it … [must] consider them."); *see also* United States v. Candelaria-Silva, Criminal No. 95-029-15 (ADC), 2022 WL 5240585, at *1 (D.P.R. Oct. 6, 2022), aff'd, No. 22-1888, 2023 WL 11693413 (1st Cir. Dec. 1, 2023); United States v. Rodriguez-Rodriguez, 686 F. Supp. 3d 58, 61 (D.P.R. 2023); United States v. Santiago-Lugo, Crim. No. 95-029-001 (ADC), 2022 WL 5246983, at *1 (D.P.R. Oct. 6, 2022), aff'd, No. 23-1082, 2024 WL 3084390 (1st Cir. Feb. 28, 2024) ("Courts are not mandated to reduce any sentence by the First Step Act – instead, the Act grants Courts the discretion to either grant or deny such reductions.") (internal citations omitted).


B.    Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act

When Congress passed the First Step Act in 2018, it "amended
the compassionate-release statute to allow incarcerated
individuals to file their own motions seeking compassionate
release as long as they first apply to the [Bureau of Prisons]
BOP." United States v. Saccoccia, 10 F.4th 1, 3-4 (1st Cir. 2021)
(*citing* Pub. L. No. 115-391 § 603(b), 132 Stat. at 5239; 18 U.S.C.
§ 3582(c)(1)(A)). To grant a prisoner-filed motion for
compassionate release, a court in its discretion must find there
to be "extraordinary and compelling reasons" warranting a
reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* United States v.
Havener, 905 F.2d 3, 6 (1st Cir. 1990) (The court must make a
finding of "extreme hardship").

"When adjudicating prisoner-initiated motions for
compassionate release, district courts have discretion,
unconstrained by any policy statement currently in effect, to
consider whether a prisoner's particular reasons are sufficiently
extraordinary and compelling to warrant compassionate release."
United States v. Ruvalcaba, 26 F.4th 14 (1st Cir. 2022) (*citing* 18
U.S.C.A. § 3582(c)(1)(A)). Nevertheless, this discretion is
limited by statutory standards mandating that Courts identify a
reason that is extraordinary and compelling. *See* United States v.
Canales-Ramos, 19 F.4th 561, 566 (1st Cir. 2022).

### III. DISCUSSION

Criminal No. 3:03-0294(GMM)
Page -9-

Rivera-Torres presents a range of arguments to justify his request for a reduction in sentence. The Court addresses each of these in turn.

A.    Guidelines Amendments

First, Rivera-Torres avers that Amendments #748, #750, #782, and #788 to the United States Sentencing Guidelines[1] apply to his case, and merit an adjusted BOL of 38, with a corresponding reduced Guidelines sentencing recommendation of 262 months to 327 months. (Docket No. 821 at 5). Courts have "the power to 'reduce' an otherwise final sentence in circumstances specified by the Commission." Dillon v. United States, 560 U.S. 817, 825 (2010). Moreover, "[t]he Supreme Court clarified in Concepción v. United States that courts have complete discretion to consider any intervening changes of fact or law between the original sentencing and the present application, apart from constraints established by

---

[1] As to Amendments #748 and #750, Amendment 748 modified the Drug Quantity table under U.S.S.G. § 2D1.1(c) by temporarily reducing the BOL for certain crack cocaine offenses in line with the mandatory minimums set in the Fair Sentencing Act. See U.S.S.G. App. C, Amend. 748 (2011). The changes made by Amendment #748 were then made permanent by Amendment #750. See U.S.S.G. App. C, Amend. 750 (2011); see also United States v. Negron-Cardona, Crim. No. 07-453-8 (PAD), 2020 WL 2747258, at *3 (D.P.R. May 26, 2020). As to Amendments #782 and #788, Amendment 782 reduced by two levels the offense levels in USSG § 2D1.1(c)'s Drug Quantity Table;" see United States v. Espinoza, 92 F. Supp. 3d 1210, 1211 (M.D. Fla. 2015); see also U.S.S.G. App. C, Amend. 782 (2014). Amendment #788 made Amendment #782 retroactive and usable by a petitioner seeking a reduced term after November 1, 2015 ; see United States v. Peak, 579 Fed. Appx. 888, 891 n. 1 (11th Cir.2014); see also U.S.S.G. App. C, Amend. 788 (2014).

Criminal No. 3:03-0294(GMM)
Page -10-

Congress or the Constitution." Rodriguez-Rodriguez, 686 F. Supp. 3d at 61 (*citing* Concepción, 597 U.S. 481).

The Court and the First Circuit previously rejected Rivera-Torres' request of a reduced sentence pursuant to Amendment #782 given that even applying the Amendment his imposed sentence already fell below "the otherwise applicable lower end of the guidelines. . ." (Docket Nos. 741; 754). Nevertheless, given subsequent developments in the law, the Court will consider the applicable cited Amendments in its recalculation of Rivera-Torres' Guidelines Range.

B.    Reduced Sentence Pursuant to Section 404 of the First Step Act

    1.    Eligibility

Rivera-Torres contends that his offenses are eligible for sentence reduction pursuant to Section 404 of the First Step Act and Section 2 of the FSA. (Docket No. 821 at 1).  The record reflects that the United States acknowledged that Rivera-Torres is eligible to have his sentenced reviewed under the First Step Act. *See* (Docket No. 808 at 4) ("The government will assume that the Defendant is *eligible* for a reduction in the component of his sentence driven by crack cocaine because the statutory penalties for his offense under 21 U.S.C. § 841(a), which *partially* involved crack cocaine, were modified by the Fair Sentencing Act (although his statutory imprisonment range was unaltered by the First Step

Criminal No. 3:03-0294(GMM)
Page -11-

Act). The Court would therefore be entitled to impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 [] were in effect at the time the covered offense was committed.") (internal quotation marks omitted).

> 2.   Calculation of Sentencing Guidelines

Having determined that the First Step Act applies to Rivera-Torres, the Court next calculates the adjusted Guidelines range to determine if it will exercise its discretion to reduce his sentence. *See* Concepción, 597 U.S. at 498 ("[T]he First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range 'anchor[s]' the sentencing proceeding.") (internal quotations omitted).

Under Section 2 of the FSA and as applied retroactively to Rivera-Torres under Section 404 of the First Step Act, the minimum quantity threshold for crack cocaine convictions under 21 U.S.C. § 841(a)(1) was increased from 50 grams to 280 grams. At sentencing, Rivera-Torres was attributed eighteen (18) kilograms of cocaine and seventy-two (72) kilograms of crack cocaine, which is well above either threshold. *See* Rivera Calderon, 578 F.3d 78 at 105. Nevertheless, following the Supreme Court's ruling in Concepción, the Court in its discretion recalculates Rivera-Torres' Guidelines range considering various policy changes that have occurred since his original sentencing.

Criminal No. 3:03-0294(GMM)
Page -12-

On appeal, the First Circuit stated that it is <u>possible</u> that the district court may have overestimated the seventy-two kilograms of crack cocaine that it attributed to Rivera-Torres at sentencing. <u>Id</u>. Even so, the appellate court found that ". . . there is record evidence indicating that [Rivera-]Torres was responsible for <u>well over</u> 1.5 kilograms of crack [cocaine] which alone would qualify him for a base offense level of 38." <u>Id</u>. (emphasis added). This Court later reaffirmed the First Circuit's conclusion in its ruling addressing Rivera-Torres' First Motion to Vacate, stating that "[e]ven taking a cautious view of these estimates, a court could find that Torres was responsible for a <u>far greater</u> quantity than the 1.5 kilograms required to trigger a base offense level of 38." <u>Rivera-Torres</u>, 38 F. Supp. 3d at 205 (emphasis added); *see also* (Docket No. 673).

While the Court acknowledges that the exact quantity of crack cocaine attributable to Rivera-Torres is uncertain, it nevertheless calculates an estimated Guidelines range adjusted under the FSA and First Step Act to help it ascertain whether a sentence reduction is merited in this case. In conducting his own recalculation of his BOL, Rivera-Torres used a quantity of 1.5 kilograms of crack cocaine. *See* (Docket No. 821 at 5). However, both this Court and the First Circuit have indicated that "well over" that amount of crack cocaine can be attributed to Rivera-Torres. *See* <u>Rivera Calderon</u>, 578 F.3d at 105.   At trial,

cooperating witnesses gave testimony that "[from 1995 to 1996 Rivera-]Torres cooked approximately a half a kilogram of crack [cocaine] per week . . . approximately twenty-four kilograms of crack . . . in 1998, [Rivera-]Torres also cooked crack [cocaine] . . . [for another individual who] . . . sold approximately a half a kilogram of crack [cocaine] per month (translating into roughly six kilograms of crack [cocaine] that year). Finally, . . . [Rivera-]Torres cooked crack [cocaine] for . . . [a third party] between 1998 and 1999 . . . [who] sold one and a half kilograms of crack [cocaine] per month, which translates, conservatively, into twelve kilograms of crack [cocaine] over the course of a year." Rivera-Torres, 38 F. Supp. 3d at 205. Using its prior review of the quantities of crack cocaine connected to Rivera-Torres at trial, the Court today recalculates his Guidelines sentencing range using a quantity of 42 kilograms of crack cocaine, an amount supported by sworn testimony at trial and which falls well below the possibly overestimated quantity of seventy-two kilograms used at Rivera-Torres' original sentencing.

Accordingly, if sentenced today for 42 kilograms of crack cocaine alone,[2] Rivera-Torres would have an initial BOL of 38. *See* U.S.S.G. § 2D1.1. Notably, a BOL of 38 has a minimum threshold of

---

[2] The Court notes that Rivera-Torres was also sentenced for the sale and distribution of marijuana and cocaine. *See* (Docket No. 496); *see also* Rivera Calderon, 578 F.3d 78 at 105.

Criminal No. 3:03-0294(GMM)
Page -14-

25.2 kilograms of crack cocaine, far below the Court's approximation of 42 kilograms. Id. The additional two-level increase assessed for the possession of a firearm and the two-level increase assessed for his role of a leader or enforcer in the conspiracy, both of which were confirmed at the appellate level, increase Rivera-Torres' total BOL to 42. Rivera-Torres, is a Category II offender, thus would be subject to a Guidelines recommended sentence of 360 months (30 years) to life of imprisonment. *See* U.S.S.G. § 5A (2023).

Plainly, Rivera-Torres is currently serving a term of 300 months of imprisonment and 60 months of supervised released. (Docket No. 741). This sentence falls well below the Guidelines range as altered by the FSA, First Step Act, and the Applicable Guidelines' Amendments.

3. Section 3553(a) Factors

The Court next considers whether the Guidelines' 3553(a) factors weigh against a reduction in sentence in Rivera-Torres' case. Rivera-Torres is 42 years old and in good health. (Docket No. 821). He is currently serving a 300-month sentence at Yazoo City FCC in Mississippi. (Id.). The Court acknowledges and commends Rivera-Torres' efforts to rehabilitate by enrolling to obtain his General Education Development test and receiving no disciplinary violations while incarcerated. (Id. at 13). However, his other

3553(a) considerations weigh against the Court exercising its discretion to grant Rivera-Torres' sentence reduction request.

Firstly, the Court cannot ignore the fact that Rivera-Torres was sentenced to a term of imprisonment lower than the adjusted Guidelines' recommendation under the First Step Act. If sentenced today with the same set of facts, Rivera-Torres would face a greater sentence than the one he is currently serving. Critically, at sentencing, Judge Dominguez benevolently granted Rivera-Torres a significant downward variance that was 60 months (5 years) below the sentence prescribed by the Guidelines. *See* (Docket No. 496).

Moreover, as noted by the United States on the record, Rivera-Torres' ". . . was an enforcer, runner, and seller in a drug-trafficking conspiracy that distributed wholesale quantities of crack and powder cocaine, heroin, and marihuana and operated multiple drug points throughout Los Alamos Housing Project ..." (Docket No. 808 at 5). Furthermore, as affirmed by the First Circuit, Rivera-Torres manufactured significant quantities of crack cocaine across a span of multiple years. *See* Rivera-Torres, 38 F. Supp. 3d at 205. These offenses are serious and are not taken lightly by the Court. Ultimately, considering Rivera-Torres' arguments and 3553(a) factors, the Court declines to grant his requested sentence reduction under the First Step Act, which would reduce his imposed term below the already moderated sentence that he is currently serving.

Criminal No. 3:03-0294(GMM)
Page -16-

C.    Compassionate Release

    1.    Guidelines Amendments

    Reading the *pro se* Fifth Motion to Reduce Sentence liberally, Rivera-Torres appears to contend that the Amendments made to the Guidelines constitute "extraordinary and compelling reasons" that justify the Court granting him compassionate release. *See* (Docket No. 821). The Court disagrees. Plainly, "the compassionate-release statute is no help to a defendant who presents only ordinary reasons." Ruvalcaba, 26 F.4th at 27 (*citing* Saccoccia, 10 F. 4th at 5). The Court finds that there is nothing extraordinary or compelling about the application of retroactive changes to the Guidelines, which as reviewed above, do not function to reduce Rivera-Torres' Guidelines recommended sentencing rage below the sentence currently imposed upon him. Thus, the Court declines to grant Rivera-Torres compassionate release based upon this argument.

    2.    The COVID-19 Pandemic

    Based on Rivera-Torres' filings, he appears to suggest that the COVID-19 pandemic also provides an extraordinary and compelling reason that supports the Court granting his request for compassionate release. See (Docket Nos. 813; 821-1). The Court disagrees.

    Courts presented with similar arguments have stated that "[c]ompassionate release due to the COVID-19 pandemic requires,

Criminal No. 3:03-0294(GMM)
Page -17-

among other things, *both a **particularized susceptibility** to the disease and a **particularized risk** of contracting the disease at his prison facility.*" <u>United States v. Gandia-Maysonet</u>, Crim. No. 96-304-2 (RAM), 2021 WL 219191, at *1 (D.P.R. Jan. 21, 2021) (*quoting* <u>U.S. v. Harper</u>, 2020 WL 2046381, at *3 (W. D. Va. 2020)); *see also* <u>United States v. Ramirez</u>, 459 F.Supp.3d 333, 337-38 (D. Mass. 2020) (collecting cases). In performing its individualized analysis, courts have considered: (1) the Defendant's age and health, including whether the Defendant has any health conditions that place him at increased risk of serious illness or death from COVID-19; (2) the health, safety, and living conditions at the facility where the Defendant is housed, any specific crowding issues, and the specific steps taken by the facility in response to the spread of COVID-19; and (3) the crime of conviction and length of his remaining sentence. <u>See United States v. Rivera</u>, Civil No. 19-40018-TSH, 2023 WL 4471983, at *2 (D. Mass. July 11, 2023).

In Rivera-Torres' case, there is a marked absence of evidence suggesting that the COVID-19 pandemic provides the Court with an extraordinary and compelling reason justifying Rivera-Torres' release. First, Rivera-Torres did not allege that he suffered from any particular health impairment that would put him at high risk to Covid-19 and merit special attention. Additionally, the BOP at Yazoo City FCC has taken adequate steps to avoid or control any

potential outbreaks, as data reflects 49% of the inmate population is fully inoculated, there are two open cases, and only 6 COVID-19 related deaths have been reported. *See* Federal Bureau of Prisons, BOP COVID-19 Statistics https://www.bop.gov/about/statistics/statistics inmate covid19.jsp (last visited June 25, 2024). Ultimately, Rivera-Torres failed to substantiate that the COVID-19 pandemic poses a particularized extraordinary threat to his well-being sufficient to compel the Court to grant him compassionate release, and thus, the Court declines to do so.

## IV. CONCLUSION

Considering Rivera-Torres' 3553(a) factors, along with the fact that his original sentence of 300 months (25 years) of imprisonment and 60 months (5 years) of supervised released is well below the Guidelines recommendation of 360 months (30 years) to life of imprisonment, the Court concludes that granting a reduction in sentence would be inconsistent with the goals of sentencing, including specific and general deterrence, promoting respect for the law, and just punishment. As such, the Court declines to exercise its discretion to reduce Rivera-Torres' sentence.

**Criminal No. 3:03-0294(GMM)**
**Page -19-**

For these reasons, the Court **DENIES WITH PREJUDICE**[3] Rivera-Torres' Fifth Motion to Reduce Sentence and adjudges his Second, Third and Fourth Motions to Reduce Sentence, which make the same arguments, to be rendered **MOOT**. See (Docket Nos. 789; 799; 813; 821).

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 19, 2024.


                                    s/Gina R. Méndez-Miró
                                    GINA R. MÉNDEZ-MIRÓ
                                    UNITED STATES DISTRICT JUDGE

---

[3] Section 404(c) of the First Step Act provides that "[n]o court shall entertain a motion made under this section to reduce a sentence ... if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Pub. L. 115-391, § 404(c).